**UNITED STATES of America, Appellee,**

v.

**Nicholas UCCIO, Defendant–Appellant.**

**No. 1469, Docket 91–1057.**

United States Court of Appeals,
Second Circuit.

Argued May 20, 1991.

Decided July 15, 1991.

Henry J. DePippo, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Nelson W. Cunningham, Asst. U.S. Atty., New York City, on the brief), for appellee.

Donald D. DuBoulay, New York City, for defendant-appellant.

Before KEARSE, MAHONEY and SNEED,* Circuit Judges.

KEARSE, Circuit Judge:

Defendant Nicholas Uccio appeals from a judgment entered in the United States District Court for the Southern District of New York, Michael B. Mukasey, *Judge*, convicting him on one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (1988), and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371 (1988), following a remand from this Court for resentencing, *see United States v. Uccio*, 917 F.2d 80 (1990) ("*Uccio I*"). On remand, Uccio was sentenced principal-

* Honorable Joseph T. Sneed, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

ly to consecutive prison terms of 60 months on the conspiracy count and 12 months on the substantive wire fraud count, to be followed by a three-year period of supervised release; he was also ordered to pay restitution to the victim of the fraud. The 72–month total prison term was an upward departure from the 51– to 63–month range indicated by the federal Sentencing Guidelines ("Guidelines"). On appeal, Uccio contends that this departure from the Guidelines range was improper principally because (1) the district court relied on a ground it had eschewed in its initial sentencing, and (2) the ground of the departure was impermissible because the conduct on which it was based could not have supported a federal conviction if prosecuted separately. For the reasons below, we reject Uccio's contentions and affirm the judgment.

## I. BACKGROUND

The background of the present prosecution is set forth in some detail in *Uccio I,* 917 F.2d 80, and we briefly summarize here only the facts and proceedings pertinent to the present appeal. The events are no longer materially in dispute.

### A. *The Events*

One of Uccio's coconspirators, Gregory Barton, was employed by Shearson Lehman Hutton, Inc. ("Shearson"), in a department that maintained an account containing funds mistakenly transferred to Shearson by banks and other financial institutions. Barton's duties included returning the misdirected funds to their sources when the correct sources were learned. In late 1987, Barton agreed with Uccio, codefendant Manos Sarantopoulos, and several others to attempt to transfer approximately $7.4 million from this account to an account opened by the coconspirators in the Philippines. Barton made that transfer in January 1988.

Within a month, the coconspirators had transferred most of the money from the Philippines to a bank in Hong Kong. Sarantopoulos's job was to take the money from Hong Kong to London. He opened the appropriate account in London and then flew to Hong Kong to obtain checks for $3.5 million of the stolen money. He ultimately failed in his mission, however, because by the time he had returned to London with the checks, payment on the checks had been stopped.

When Sarantopoulos returned to New York without having completed the transfer, the other coconspirators suspected that he was double-crossing them and keeping the money for himself. Uccio and an associate therefore kidnaped Sarantopoulos, held him in a locked room, hit him, and "pricked" him with a knife in an attempt to force him to produce the money. As a result, Sarantopoulos agreed to attempt to retrieve the money; Uccio thereupon let him go. Though Sarantopoulos again failed, Uccio and the other coconspirators continued to pursue plans for other transfers from the Shearson account.

Uccio, arrested with several others in November 1988, was eventually convicted, after trial, of wire fraud relating to the $7.4 million transfer from Shearson and of conspiracy to commit wire fraud.

### B. *The Prior Sentencing*

The initial sentencing calculation, based on a total offense level of 22 and a criminal history category of III, resulted in a sentencing range of 51 to 63 months. The probation department's Presentence Report ("PSR"), however, suggested several possible grounds for an upward departure, including (1) Uccio's conduct in kidnaping and assaulting Sarantopoulos in furtherance of the wire fraud scheme, and (2) the fact that Uccio had a prior conviction that, because of its age and the brevity of the sentence, was not included in the calculation of his criminal history. In addition, the court suggested a possible upward departure based on Uccio's tape recorded statements, introduced at trial, that he was involved in numerous other "things" with his "people" in New York, which the court inferred meant other criminal conduct.

In support of its suggestion for an upward departure based on the kidnaping and assault of Sarantopoulos, the PSR relied on

Guidelines § 5K2.4, which allows an upward departure where "a person is abducted ... or unlawfully restrained to facilitate commission of the offense" of conviction. In opposition, Uccio argued that § 5K2.4 deals only with the abduction or unlawful restraint of victims of the underlying offense and that it was not the intent of the Guidelines to enhance punishment for violence against a coparticipant in the crime. The district court apparently agreed with Uccio, stating,

> I will go along with you saying that[.] I think [§ 5K2.4] really talks about a situation in which you in essence kidnap a victim in some fashion or other in order to facilitate the crime, not in which there is a falling out among the people involved and one of them resorts to violence against the other in order to get him to do what he's supposed to do. I agree with that.

(Sentencing Transcript, February 5, 1990 ("Feb. Tr."), at 12–13.)

The district court concluded, however, that an upward departure was warranted on the other suggested grounds, stating, in pertinent part, that

> [b]ecause of the substantial record this defendant has, because of the apparent other activities that he was engaged in at the time, because of the violence that it [*sic*] was associated with making sure that the scheme went forward, I think all of those factors warrant a sentence upward of the guideline.

(Feb. Tr. at 14–15.) Uccio was eventually sentenced principally to prison terms totaling 78 months, to be followed by a three-year term of supervised release.

## C. *The First Appeal*

Uccio appealed that sentence to this Court, challenging, *inter alia*, the upward departure from the recommended Guidelines range, and in *Uccio I* we vacated the judgment. In light of two recent decisions of this Court concerning the procedures to be followed in making an upward departure, *United States v. Kim*, 896 F.2d 678 (2d Cir.1990), and *United States v. Colon*, 905 F.2d 580 (2d Cir.1990), neither of which had been available to the district court at its sentencing of Uccio, the government consented to a remand for reconsideration of the upward departure. This Court agreed that a remand for resentencing was required in order to permit the court to make factual findings in accordance with those cases. *Uccio I*, 917 F.2d at 85.

In connection with Uccio's argument to the district court that the upward departure could not permissibly be based on the kidnaping and assault of Sarantopoulos, we observed that

> [t]he district court agreed with defendant's position that the use of violence against a person involved in committing a crime, rather than against a victim, was not the type of conduct contemplated as the basis for an upward departure under section 5K2.4.

*Id.* at 82–83. Noting that this suggestion by the court, "that it would not rely on the kidnapping as the basis for departure, arguably depriv[ed] the defense of its opportunity to fully challenge its use as an upward departure factor," *id.* at 86, we stated that the district court would have the opportunity on remand to clarify the "violence ... associated with making sure that the scheme went forward" on which it based its upward departure.

## D. *The Resentencing*

On remand, the district court held a conference on December 6, 1990, at which it notified the parties that it would consider departing upward from the Guidelines range on two bases: (1) Uccio's kidnaping and assault of Sarantopoulos, and (2) recorded statements by Uccio that the court interpreted to refer to other criminal activities committed by Uccio with others. The court invited the parties to submit their positions in writing. Uccio opposed both grounds. The government expressed its doubt that the latter basis could be sustained, and it urged that there be an upward departure solely on the basis of the Sarantopoulos kidnaping and assault.

At the resentencing hearing held on December 21, 1990, the court decided to ground its upward departure only on the kidnaping and assault of Sarantopoulos, in-

dicating that this conduct, which was designed to facilitate the commission of the underlying offenses, was an aggravating circumstance sufficient to warrant a departure. In response to Uccio's attorney's argument that at the original sentencing hearing the court had viewed Guidelines § 5K2.4 as inapplicable where the victim of the kidnaping was not a victim of the underlying crime, the court stated that

> [t]he violence is clearly associate[d] with the commission of the offense. Any views I expressed initially about [§] 5K2.4 being confined strictly to victims of the offense I now believe to be incorrect. I can see an excellent reason why one should not confine that guideline simply to victims of the offense, because to do so, among other things, it [*sic*] will simply conclude that anything that goes on between co-conspirators is, in essence, their own business, and that is just not warranted.

(Sentencing Transcript, December 21, 1990 ("Dec. Tr."), at 6.)

After making computations that are not challenged on this appeal, the court determined that the upward departure based on the kidnaping and assault would, by reference to analogous Guidelines provisions for federal kidnaping and assault offenses, result in an increase of offense level from 22 to 25; it decided to move only to an offense level of 24, which produced a recommended imprisonment range of 63 to 78 months. The court exercised its discretion to sentence Uccio to a total of 72 months, rather than the maximum.

Judgment was entered as indicated above, and this appeal followed.

## II. DISCUSSION

On the present appeal, Uccio challenges the court's upward departure on several procedural and substantive grounds. For the reasons below, we reject all of his contentions.

### A. *The Procedural Contentions*

Uccio contends that, given the district court's pre-*Uccio I* ruling that Guidelines § 5K2.4 was not applicable to the Sarantopoulos kidnaping and assault, the upward departure on the basis of that conduct on remand was barred by the law-of-the-case doctrine and by this Court's *Uccio I* mandate. For several reasons, we disagree.

The law-of-the-case doctrine has several branches; one deals with decisions of a lower court that have been ruled on on appeal, and another deals with decisions that have not been ruled on on appeal. Under the first branch of the doctrine, the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals. "When an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue." *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977); *see Doe v. New York City Department of Social Services*, 709 F.2d 782, 788 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478, at 792–93 (1981) ("*Wright, Miller, & Cooper*"). This principle has no applicability to the present case, for in *Uccio I* this Court did not rule on the question of whether the Sarantopoulos kidnaping and assault could be the basis of the district court's upward departure. The district court having disavowed the Sarantopoulos basis for its departure, and the government having conceded that a remand with respect to the departure was needed, we had in *Uccio I*, as Uccio states in his brief on the present appeal, "no occasion to decide whether violence toward a co-defendant can be a proper basis for an upward departure." Rather, we noted that the district court's disavowal might have prevented Uccio from making desired arguments against the Sarantopoulos basis for departure, and we remanded for further proceedings. Hence, on remand, an upward departure on the basis of the Sarantopoulos kidnaping and assault was in no way barred by the mandate of this Court.

Since *Uccio I* did not rule on the Sarantopoulos ground of departure, our va-

cation of Uccio's sentence left the district court free to change its prior ruling on that matter, for until there is a final judgment in a case, an interlocutory ruling generally remains subject to reconsideration or modification. *See United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir.1982) (" 'whether the case *sub judice* be civil or criminal[,] so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so' ") (quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir.1973)), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983). If a final judgment has been entered but has been set aside on appeal, and the matter has been remanded for further proceedings, the status of the case, except as to issues explicitly or implicitly decided on appeal, is as if no final judgment had been entered. *Cf. United States v. Ayres*, 76 U.S. (9 Wall.) 608, 610, 19 L.Ed. 625 (1869) (appellate order for "new trial has the effect of vacating the former judgment, and to render it null and void, and the parties are left in the same situation as if no trial had ever taken place"); *United States v. Lawson*, 736 F.2d 835, 837 (2d Cir.1984). Thus, a "corollary [of the first branch of the law-of-the-case doctrine is] that upon remand the trial court may consider matters not expressly or implicitly part of the decision of the court of appeals." *United States v. Cirami*, 563 F.2d at 33.

■ The court's exercise of its power to reconsider and modify its prior interlocutory rulings is informed by the second branch of the law-of-the-case doctrine. That principle is that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case. *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). However, this branch of the doctrine, while it informs the court's discretion, "does not limit the tribunal's power." *Id.* Thus, we have noted that "[t]he doctrine of the law of the case is not an inviolate rule," *United States v. Birney*, 686 F.2d 102, 107 (2d Cir.1982); *see Slotkin v. Citizens Casualty*

*Co. of New York*, 614 F.2d 301, 312 (2d Cir.1979), *cert. denied*, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980), and the decision whether or not to apply law-of-the-case is, in turn, informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine, *United States v. Birney*, 686 F.2d at 107; *First National Bank of Hollywood v. American Foam Rubber Corp.*, 530 F.2d 450, 453 n. 3 (2d Cir.), *cert. denied*, 429 U.S. 858, 97 S.Ct. 157, 50 L.Ed.2d 135 (1976). In this context "prejudice" does not mean harm resulting from the failure to adhere to the prior decision; "rather, it refers to a lack of sufficiency of notice" or a lack of sufficient "opportunity to prepare armed with the knowledge that [the prior ruling is not deemed controlling]." *United States v. Birney*, 686 F.2d at 107. We have noted that this Court will adhere to its own prior rulings in a given case "absent 'cogent' or 'compelling' reasons" to deviate, such as " 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " *Doe v. New York City Department of Social Services*, 709 F.2d at 789 (quoting 18 *Wright, Miller, & Cooper* § 4478, at 790 (footnote omitted)); *see United States v. Yonkers Board of Education*, 856 F.2d 7, 11 (2d Cir.1988).

We find no error in the district court's rejection of this branch of the law-of-the-case doctrine in the present case. Following the remand, the district court held a conference and gave Uccio more than two weeks' notice that it would consider the Sarantopoulos kidnaping and assault as one of the possible bases for upward departure; it invited the parties to submit their positions in writing. Uccio submitted two written statements in opposition. At the sentencing hearing, the court afforded the parties an opportunity to elaborate on their positions orally. Hence, Uccio had ample notice and an opportunity to attempt to persuade the court that it should not alter its prior ruling.

The court's reason for revisiting its ruling was a valid one. It expressed the view

that its prior belief "about [§] 5K2.4 being confined strictly to victims of the offense" was "incorrect." (Dec. Tr. at 6.) Having given Uccio sufficient notice and an opportunity to be heard, it was well within the court's discretion to decline to deem itself bound by a ruling that it had come to view as wrong.

In sum, we conclude that the district court's reconsideration of the Sarantopoulos kidnaping and assault was not foreclosed on procedural grounds.

### B. *The Substantive Challenge to the § 5K2.4 Departure*

■ In challenging the merits of the district court's decision to depart on the basis of the Sarantopoulos kidnaping and assault, Uccio does not contest the findings that these events occurred and that they were acts in furtherance of the offense of which Uccio was convicted. Rather, he contends principally that no upward departure pursuant to § 5K2.4 was permissible because, not being acts against persons specially protected by federal law, *see, e.g.,* 18 U.S.C. §§ 111, 351 (1988) (punishing assault or kidnaping of certain federal officials), and not having an interstate character, *see id.* § 1201 (1988) (punishing kidnaping where abductee is transported in interstate or foreign commerce), the misconduct on which the departure was premised could not have been prosecuted as a federal offense. Again, we disagree.

A sentencing court may elect to depart from the imprisonment range specified by the Guidelines if it finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1988). Under Chapter 5, Part K, of the Guidelines, the court may depart upwardly if it finds that circumstances relating to the manner, effect, or other characteristics of the offense aggravate or mitigate the offense conduct in a way not adequately taken into consideration by existing Guidelines provisions. *See* §§ 5K2.0–5K2.15; *see gen-*

*erally United States v. Colon,* 905 F.2d at 585; *United States v. Ferra,* 900 F.2d 1057, 1062 (7th Cir.1990).

■ Fraudulent schemes do not typically involve violent conduct, and the Guidelines sections dealing with fraud offenses do not make provision for adjustments on account of kidnapings or assaults occurring in the course of the fraud. In identifying grounds for departure, however, § 5K2.4 of the Guidelines, as a "Policy Statement," provides specifically for an upward departure when the offense of conviction is not kidnaping but has entailed a kidnaping. That section reads as follows:

> If a person was abducted, taken hostage, or unlawfully restrained to facilitate commission of the offense or to facilitate the escape from the scene of the crime, the court may increase the sentence above the authorized guideline range.

Section 5K2.4 does not by its terms require that the abduction or unlawful restraint constitute an independent federal offense in order to authorize a departure, and we see no reason to read in such a requirement, for the enhanced punishment is not directed toward separately indictable criminal conduct but rather toward conduct aggravating the offense of conviction. We conclude that where the violent misconduct, though not itself violating federal law, was undertaken in furtherance of the federal offense, the district court is permitted to depart on the basis of that misconduct. *Cf. United States v. Kikumura,* 918 F.2d 1084, 1105 n. 26 (3d Cir.1990).

In arguing for the contrary result, Uccio places principal reliance on *United States v. Kim,* 896 F.2d 678. In *Kim,* noting that Chapter 5, Part K departures apply only to "acts of misconduct not resulting in conviction," we directed sentencing judges to measure the extent of those departures by reference to the penalties that would have been provided by the Guidelines if the misconduct at issue had resulted in a federal conviction, in order that "an act that need be proven only by a preponderance of evidence, ... [not] result in more punishment than would be called for if the act had been proven beyond a reasonable doubt and had

resulted in conviction," 896 F.2d at 684. *Accord United States v. Kikumura,* 918 F.2d at 1112; *United States v. Ferra,* 900 F.2d at 1062–63. Uccio's reliance on *Kim* is misplaced for two reasons. First, we were confronted there with misconduct that could have grounded a federal conviction, not with misconduct that arguably did not violate federal law, and hence we had no occasion to consider the latter. Second, we dealt not with whether the ground of departure was authorized but only with whether the extent of the departure was reasonable, *see* 18 U.S.C. § 3742(e)(3) (1988) (imposition of a sentence outside of the applicable Guidelines range must not be "unreasonable"); *United States v. Palta,* 880 F.2d 636, 639 (2d Cir.1989) (extent of an authorized departure must be reasonable). Thus, *Kim* did not purport to deal with the question presented here, *i.e.,* whether, as to misconduct that could not have grounded a federal conviction, there can be any departure at all.

Finally, we note that it is not clear from Uccio's brief on appeal whether he continues to pursue the main argument he made in the district court both in the pre-*Uccio I* proceedings and on remand, *i.e.,* that § 5K2.4 does not apply to acts of violence against coparticipants in the crime. In any event, we reject this proposition. Though most often the victim of the kidnaping would be a target of the crime or an innocent bystander, the scope of this section is not so limited. There is no language indicating that the "person" abducted cannot be a coconspirator. As the district court reasoned on remand, to ignore an abduction carried out in furtherance of the underlying offense simply because the abductee was a member of the conspiracy would be to "conclude that anything that goes on between coconspirators is, in essence, their own business." (Dec. Tr. at 6.) No such policy is to be found in the law or in the Guidelines, and we agree with the district court's post-*Uccio I* view that § 5K2.4 encompasses abduction, unlawful restraints, and other violence against coconspirators.

In sum, given the facts found by the district court, the departure pursuant to § 5K2.4 on the basis of the kidnaping and assault of coconspirator Sarantopoulos was authorized.

## CONCLUSION

We have considered all of Uccio's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.