UNITED STATES of America, Appellee,

v.

Philip STANLEY, Defendant–Appellant.

No. 920, Docket 94–1337.

United States Court of Appeals,
Second Circuit.

Argued Feb. 3, 1995.

Decided April 28, 1995.

Kevin P. Candon, Rutland, VT, for defendant-appellant.

Gregory L. Waples, Asst. U.S. Atty., Burlington, VT (Charles R. Tetzlaff, U.S. Atty., David V. Kirby, Chief, Crim. Div., Burlington, VT, of counsel) for appellee.

Before: FEINBERG, CARDAMONE, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

In *United States v. Stanley*, 12 F.3d 17 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1572, 128 L.Ed.2d 216 (1994) ("*Stanley I*"), a panel of this Court affirmed Philip Stanley's conviction in the United States District Court for the District of Vermont (Billings, *J.*) for bank fraud, mail fraud, causing false entries in bank records, and false statements. The panel vacated his sentence, however, because the district court's determination that Stanley caused a "loss" of $500,000 to $800,000 under U.S.S.G. § 2F1.1 (Nov. 1992) was ambiguous and not adequately supported by factual findings. On remand, the district court altered its methodology for calculating the loss, concluding that the loss on each count of conviction fell within the $350,000–$500,000 range prescribed by § 2F1.1(b)(1)(J). The court sentenced Stanley to four concurrent terms of thirty months' imprisonment, and ordered restitution of $482,600.

On this second appeal, Stanley again challenges the loss calculation. Stanley also contests, for the first time on appeal, a two-level increase in his offense level under § 2F1.1(b)(2) (more than minimal planning and multiple victims), and the restitution order. For the reasons that follow, we affirm the district court's loss calculation. We further hold that under the law of the case doctrine Stanley may not now challenge the two-level increase in his offense level or the restitution order.

## BACKGROUND

The facts are fully set forth in *Stanley I.* We briefly recount them.

Stanley was the Trust Investment Officer at Merchants Trust, a trust company located in Burlington, Vermont. As Trust Investment Officer, Stanley made investment decisions for his trust clients. The clients received periodic statements from Merchants Trust, reflecting investment activity in their portfolios.

In mid-September 1989, Stanley purchased, at par, $485,000 worth of $100 par value Bank of New England bonds ("BNE bonds") for approximately forty trust clients. Seven weeks later he bought an additional $855,000 in BNE bonds at par value for these same trust clients. On November 30, 1989, the market price for each bond was approximately $99.75. Soon thereafter, the price began to deteriorate alarmingly. At the end of December, the price had fallen to about $72. By the end of January, 1990, the price had plunged to $23. In February, the price rebounded to $34.

Fearing for his job, Stanley arranged to misstate the valuation of the bonds, as reported in the periodic statements. As a result, statements mailed in January 1990 (reflecting activity in December 1989) reported that the BNE bonds were worth $98 each, when in fact they were worth only $72. Similarly, statements mailed in February (covering January activity) reported a price of $85, when the true price was $23. Thereafter, Stanley's deception was discovered, and in March the trust clients received an accurate accounting, revealing that, in four months, the BNE bonds had lost roughly two-thirds of their value.

Because of Stanley's deceit, Merchants Trust decided to buy all of the BNE bonds itself at the original par value of $100 per bond. Merchants Trust eventually sold the bonds for $27 each, incurring a loss of more than $900,000, most of which was covered by insurance.

*Original sentencing*

Following a jury trial, Stanley was convicted of bank fraud, in violation of 18 U.S.C. § 1344; mail fraud, in violation of 18 U.S.C. § 1341; causing false entries to be made in bank records, in violation of 18 U.S.C. § 1005; and making false statements, in violation of 18 U.S.C. § 1001. The district court calculated a base offense level of six under

U.S.S.G. § 2F1.1(a), the Guideline applicable to offenses involving fraud or deceit. The court then increased Stanley's offense level by ten under § 2F1.1(b)(1)(K) because it determined that he was responsible for a "loss" of between $500,000 and $800,000. This loss calculation was based on the difference between the price of the bonds when Stanley began his deception ($72) and the price when his deceit was discovered ($34), multiplied by the total number of bonds purchased (13,-400). Thus, the court conceded that the initial $28 per bond loss which occurred before the fraud began ($100–$72) was attributable to a poor investment decision, and therefore not fairly included in the loss calculation. The court added two levels under § 2F1.1(b)(2) for more than minimal planning, and two more levels under § 3B1.3 for abuse of a position of trust.

Based upon these calculations, Stanley's total offense level was twenty. With a Criminal History Category of I, the sentencing range was 33–41 months. The district court sentenced Stanley to four concurrent terms of 34 months' imprisonment, and ordered restitution of $509,200.

*Stanley's first appeal*

In his first appeal, Stanley challenged both his conviction and his sentence. A panel of this Court affirmed the conviction, but vacated the sentence because the district court did not indicate whether its "loss" calculation under § 2F1.1 was based on "actual loss" or "intended loss," and failed to make sufficient factual findings to support either theory. *See Stanley I*, 12 F.3d at 20–21; *see also* U.S.S.G. § 2F1.1, comment. (n.7) ("[I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss.").

On resentencing, the district court took a different tack to calculate the loss. The court first determined that there were two victims of Stanley's fraud: Merchants Trust, and the individual trust clients who held BNE bonds in their portfolios. The court then examined each count of conviction to determine (1) whether the victim was Merchants Trust or the trust clients, and (2) the actual amount of the loss to the victim.

With respect to the bank fraud, false entries, and false statements counts, the court identified Merchants Trust as the victim. The court determined that the loss for these counts was $482,600, representing the difference between the bonds' value when Stanley's fraud began and when it was discovered ($72–$34), multiplied by the number of bonds still held when the fraud was discovered (12,-700).

On the mail fraud count, the district court named the trust customers as the victims. In calculating this loss, the court apparently relied on § 2F1.1, comment. (n.7(a)) (fraud involving misrepresentation of value). Based on a stipulation between the parties, the court found that Stanley overstated the value of each BNE bond by $26 in the statements mailed in January ($98 reported value—$72 actual value). Because holders of 12,150 bonds received those statements, the misrepresentation totalled $315,900 ($26 × 12,150). (At sentencing, the district court concluded that the product of $26 and 12,150 was $315,-000, rather than $315,900, an error of no practical consequence.) In the second set of statements, mailed in February 1990, Stanley inflated each bond's value by $62 ($85 reported value—$23 actual value). Holders of 1,250 bonds received the statements. Thus, the misrepresentation was $77,500 ($62 × 1,250). The misrepresentations in both sets of statements therefore totalled $393,400.

The court then turned to Stanley's offense level. The court again began with a base offense level of six under § 2F1.1(a). It added nine levels pursuant to § 2F1.1(b)(1)(J) because the loss fell within the $350,000 to $500,000 range. The court added two levels for abuse of a position of trust, § 3B1.3, and two additional levels for more than minimal planning and a scheme to defraud multiple victims, § 2F1.1(b)(2). These calculations netted a total offense level of nineteen.

At Criminal History Category I, the corresponding sentencing range was 30–37 months. The court rejected Stanley's request for a downward departure under § 5K2.0 (mitigating circumstances not adequately taken into account by the Guide-

lines), based on the consideration that Stanley had not sought to "line his pockets," but only to conceal his poor investment decision. The court sentenced Stanley to four concurrent terms of 30 months' imprisonment, the lower end of the applicable sentencing range, and ordered restitution of $482,600, to be paid to the insurance company that reimbursed Merchants Trust for most of the cost of purchasing the bonds from trust clients.

*Second appeal*

On this second appeal, Stanley challenges only his sentence, raising three arguments. First, he argues that the district court again miscalculated the loss. Second, he contends that his offense did not involve more than minimal planning and multiple victims. Third, he challenges the restitution order. For the reasons that follow, we affirm.

## DISCUSSION

### I. *Loss calculation*

Stanley's principal argument on appeal is that his offense level should not have been increased at all under § 2F1.1(b) since he caused no loss to either Merchants Trust or its customers within the meaning of the Sentencing Guidelines.

Under § 2F1.1, "loss is the value of the money, property or services unlawfully taken." § 2F1.1, comment. (n.7). Stanley posits that he did not "unlawfully take" anything because the bonds would have lost their value even if he had not falsified the statements. He further contends that the falsification did not cause any loss because Merchants Trust intended to hold the bonds to maturity, or at least until after February 15, 1990, when an interest payment was due on the bonds. From these arguments Stanley concludes that the only loss Merchants Trust suffered was the deprivation of his honest services, which he suggests would be his salary for the months involved.

The Guidelines provide that, for fraud and deceit

the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based on the approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud and the revenues generated by similar operations. The offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss.

§ 2F1.1, comment. (n.8).

■ With respect to the bank fraud, false entry, and false statements counts, the court identified Merchants Trust as the victim. Although Stanley is correct that the bonds would have lost value regardless of his fraud, he nonetheless caused Merchants Trust to suffer a loss. The president of Merchants Trust testified at resentencing that, while the original intent was to hold the bonds until maturity, they would have been sold immediately if bank officials knew of the steep decline in their value. Indeed, the bank did exactly that after Stanley's fraud was uncovered. Thus, the district court's calculation that Stanley caused Merchants Trust to lose $482,600 was reasonable. The Guidelines require no more.

■ As to the court's calculation of the loss to the customers of Merchants Trust on the mail fraud count, § 2F1.1, comment. (n.7(a)) of the Guidelines provides that

A fraud may involve the misrepresentation of the value of an item that does have some value (in contrast to an item that is worthless). Where, for example, a defendant fraudulently represents that stock is worth $40,000 and the stock is worth only $10,000, the loss is the amount by which the stock was overvalued (*i.e.,* $30,000).

Stanley urges us to limit this application note to transactions where the victim is gulled into a poor investment decision by a misrepresentation of value. We see no reason to so hold. By wildly inflating the value of the bonds in the January and February statements, Stanley affected the trust customers' economic decision-making. But for his misrepresentations, the trust customers might have insisted that Merchants Trust sell the bonds, thereby minimizing the loss. Because § 2F1.1, comment. (n.7(a)) is plainly aimed at such detrimental reliance on misrepresenta-

tions of value, we find the district court's loss calculation on the mail fraud count to be entirely reasonable.

## II. *More than minimal planning enhancement*

Stanley's presentence report recommended a two-level increase in his offense level pursuant to U.S.S.G. § 2F1.1(b)(2) because the offense involved more than minimal planning and more than one victim. Stanley contested that recommendation, but the district court imposed the enhancement. Although Stanley did not pursue the issue on his first appeal to this Court, he attempts to do so now. The government argues that Stanley is barred under the "mandate rule" from challenging the enhancement on this second appeal. We agree.

█ The mandate rule is a specific application of the law of the case doctrine. The rule bars the district court from "'reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals.'" *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir.1993) (quoting *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991)), *cert. denied*, —— U.S. ——, 115 S.Ct. 344, 130 L.Ed.2d 300 (1994). The district court, however, retains discretion under the mandate rule to reconsider, on remand, issues that were not "expressly or implicitly" decided by this Court. *United States v. Cirami*, 563 F.2d 26, 33 (2d Cir.1977) (citation omitted). The rule serves a number of purposes, including finality of judgment and deference to the decisions of appellate courts.

Two of our recent cases are illustrative. In *Minicone*, the defendant at his initial sentencing sought to reduce his offense level because he played only a minor role in the offense. The district court rejected the defendant's argument, and the defendant appealed. A panel of this Court agreed with the district court that the defendant was not a minor participant, but vacated the sentence and remanded for resentencing on a different issue. At resentencing, the district court had a change of heart and this time granted the minor role reduction. On appeal by the government, we held that the district court had

violated the mandate rule. *See* 994 F.2d at 88–89.

*Uccio* involved the same point in the context of an upward departure. At initial sentencing, the district court agreed with the defendant that an upward departure under § 5K2.4 (abduction or unlawful restraint in furtherance of the underlying offense) was unwarranted, but departed upwardly on other grounds. The defendant appealed, challenging the upward departure. We left open whether a departure under § 5K2.4 was appropriate. On remand, the district court decided that a departure based on § 5K2.4 was warranted. *See* 940 F.2d at 754–56. On the defendant's second appeal, we found no violation of the mandate rule because the issue had remained open after the defendant's first appeal. *See id.* at 757–59.

█ Here, unlike the defendants in *Minicone* and *Uccio*, Stanley on his first appeal failed even to raise the issue he now seeks to litigate. Because he decided on his first appeal to forego any argument concerning the § 2F1.1(b)(2) enhancement, the mandate rule prohibited the district court from reopening the issue, unless our initial opinion called for *de novo* resentencing. *See United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993) (where appellate court vacates a sentence and remands for consideration of a specific issue, mandate rule prevents district court from hearing an issue not raised on the initial appeal); *United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir.1994) (per curiam) (same), *cert. denied*, —— U.S. ——, 115 S.Ct. 777, 130 L.Ed.2d 671 (1995); *United States v. Bell*, 5 F.3d 64, 66 (4th Cir.1993) ("the [mandate] rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived"); *cf. Day v. Moscow*, 955 F.2d 807, 812 (2d Cir.) (where this Court vacated the district court's dismissal of plaintiff's "arrest/search claims" so that plaintiff could "'file an amended complaint amplifying *those* claims,'" this Court "implicitly, if not explicitly, ruled that any amended complaint was to be limited to those claims") (citation omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992). *But see United States v. Moored*, 38 F.3d 1419, 1421–23 (6th Cir.1994) (no viola-

tion of mandate rule where, on remand, district court reversed an earlier ruling that neither party had initially appealed).

Our decision in *Stanley I* did not call for *de novo* resentencing. Instead, we identified a narrow issue for remand: whether the district court's loss calculation was based on the actual or intended loss to Merchants Trust and its customers. *See Stanley I,* 12 F.3d at 21 ("[B]ecause the district court failed to indicate whether its loss calculation was based on actual or intended loss, and failed to make sufficient factual findings supporting either calculation, we remand for resentencing.... We have examined Stanley's remaining contentions regarding his sentence and find them to be without merit."). Thus, even if the district court reconsidered the § 2F1.1(b)(2) enhancement—a matter by no means clear from the record—it did so improperly. (Stanley insists that the district court *did* reconsider the enhancement. At resentencing, however, there was no argument concerning the enhancement, although it appears that the parties did brief the issue. In addition, the court stated several times that the "sole issue" was the loss calculation.)

We recognize that the law of the case doctrine is not inflexible and that this Court retains discretion to hear Stanley's eleventh-hour argument under compelling circumstances. *See, e.g., Uccio,* 940 F.2d at 758 ("[T]his Court will adhere to its own prior rulings in a given case absent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (internal quotations omitted). Stanley can point to no compelling circumstances, and we decline to reopen an issue resolved by *Stanley I.*

III. *Restitution*

■ The district court ordered Stanley to pay $482,600 in restitution under the Victim and Witness Protection Act of 1982 ("the Act"), 18 U.S.C. §§ 3663–64. The Act, as interpreted by the Supreme Court, "authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey*

*v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990). (Congress subsequently amended the Act to overrule *Hughey,* but the government concedes that the amendments are inapplicable to Stanley.) Stanley theorizes that the counts for which he was convicted applied only to the statements mailed in February, and thus the maximum restitution he could be ordered to pay is $77,500 ($85 reported value—$23 actual value, multiplied by 1,250 bonds). The government counters that this argument is barred by the mandate rule, and in any event is meritless. Again, we agree with the government.

Stanley failed to argue on his first appeal that the restitution order violated the Act, even though the district court's initial loss calculation, like the present one, relied upon both the January and February statements. The district court was therefore constrained under the mandate rule from considering the issue on remand. Moreover, the bank fraud count—upon which Stanley *was* convicted—encompassed both sets of statements. Accordingly, no special circumstances exist to justify this Court in disturbing *Stanley I.*

CONCLUSION

The district court's loss calculations constitute a reasonable estimate of the loss Stanley caused to Merchants Trust and its customers. Further, the district court was barred under the mandate rule from considering Stanley's challenge to the two-level enhancement of his sentence under § 2F1.1(b)(2), and to the restitution order. We have considered all of Stanley's remaining arguments, and find them to be without merit. The decision of the district court is AFFIRMED.