**UNITED STATES of America**

v.

**James L. TENZER, Defendant.**

**No. 95 CR. 1016(CLB).**

United States District Court,
S.D. New York.

May 7, 1998.

Cynthia Dunn, Asst. U.S. Atty., U.S. Attorney's Office, White Plains, NY, for plaintiff.

William F. Dowling, Wachted & Masyr, LLP, New York, NY, for defendant.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

This case arises out of the failure of defendant, James L. Tenzer, to timely file income tax returns for the years 1987 through 1990. On November 30, 1995 Mr. Tenzer was charged in a four-count Information with having unlawfully, willingly and knowingly failed to file income taxes for each of those years. Presently before the Court for decision is a renewed motion by Mr. Tenzer to dismiss the Information on the ground that the charges in the Information were filed against him in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

This Court, in a decision issued on September 10, 1996, granted Mr. Tenzer's previous motion to dismiss the Information on the grounds that he complied with, and was thus protected by, the Internal Revenue Service's published voluntary disclosure policy. *United States v. Tenzer*, 950 F.Supp. 554 (S.D.N.Y.1996). Our Court of Appeals reversed, in an opinion issued on September 19, 1997, holding that Mr. Tenzer's offer in compromise failed to satisfy one of the requirements of that policy, that the taxpayer make bona fide arrangements to pay his tax liability. *United States v. Tenzer*, 127 F.3d 222 (2d Cir.1997). The Court of Appeals denied Mr. Tenzer's petition for a rehearing by order dated November 6, 1997, and the Supreme Court denied his petition for certiorari on April 27, 1998. Familiarity with the prior opinions is assumed.

Mr. Tenzer now renews his motion for this Court to dismiss the Information based on "new evidence" which shows that his offer in compromise was never "rejected" by the IRS, but was merely returned as "not processable." *See* Ex. A to April 15, 1998 Wachtel Letter. The Government contends that the fact that Mr. Tenzer's offer was never "rejected" is not new evidence. While a February 26, 1993 letter to Mr. Tenzer from the IRS stating that "[t]he Offer in Compromise that you recently submitted is being returned to you because it is not processable," *see* DX G, was previously in the record, the IRS' computer printout listing Mr. Tenzer's offer as still pending rather than rejected was not a part of the record and represents information received for the first time on this motion. That a denial as unprocessable and a rejection are not equivalent was never made clear, and throughout the litigation of this case both parties, this Court and the Court of Appeals proceeded on the assumption that Mr. Tenzer's offer had been rejected by the IRS (the Court of Appeals found that the IRS returned Mr. Tenzer's

check "and rejected the offer as being 'unprocessable' because it was below the minimum amount." *Tenzer*, 127 F.3d at 224.). In its oral argument to the Court of Appeals the Government stated that the offer had been "rejected out of hand," whatever that means. Ex. B to Vinegrad Reply Declaration.

Mr. Tenzer contends that, because his offer in compromise was never rejected, that the IRS failed to negotiate with him in good faith towards the end of achieving an arrangement to pay his tax liability and that, as a result, the Information against him should be dismissed based on a denial of due process. For the reasons set forth below Mr. Tenzer's motion is denied.

### Discussion

Mr. Tenzer argues that the Court of Appeals never considered (1) whether the IRS' decision unilaterally to terminate negotiations without ever rejecting his offer in compromise was arbitrary and capricious and (2) whether that decision violated his due process rights.

Mr. Tenzer filed his 1987, 1988 and 1989 tax returns in February 1992. His case was subsequently assigned to IRS revenue officer Elizabeth Kishlansky for civil enforcement purposes. Officer Kishlansky refused to consider any installment plan for payment of the tax liability until all of Mr. Tenzer's delinquent returns were filed. In November 1992 Mr. Tenzer filed his 1990 and 1991 returns. On January 8, 1993 Mr. Tenzer's lawyers met with Officer Kishlansky. This Court found that when attorney Honecker (an experienced former IRS lawyer) asked, Officer Kishlansky assured him that Mr. Tenzer's voluntary disclosure was being considered as a civil matter. The Court of Appeals did not disturb this finding. *Tenzer*, 127 F.3d at 224.

The possibility of an offer in compromise of Mr. Tenzer's liability was also discussed at the January 8, 1993 meeting. Officer Kishlansky stated that such an offer would not be considered unless Mr. Tenzer became current on his accruing taxes and she estimated that a reasonable offer, considering the magnitude of Mr. Tenzer's liability, would be in excess of $600,000. On February 5, 1993

attorney Honecker submitted a formal offer in compromise to the IRS proposing a payment of $250,000. An initial payment of $5,000 was enclosed with the letter. On February 26, 1993 the IRS returned the $5,000 check and determined that Mr. Tenzer's offer in compromise was "not processable" because the amount proposed was too low. The letter invited Mr. Tenzer to make changes and resubmit the offer. Ex. F. The fact that the IRS expected Mr. Tenzer to resubmit his offer is confirmed by the notation in the "remarks" section of the IRS' computer printout of Mr. Tenzer's case which reads "[terry (see ruth when this comes back from tp)]". Ex. A to Wachtel Letter.

In an April 14, 1993 letter attorney Honecker informed Officer Kishlansky that Mr. Tenzer's offer had been incorrectly denied because of the IRS' failure to discount Mr. Tenzer's non-liquid assets to their "forced sale" value, and stated that he would be resubmitting the offer in compromise with an explanation of how he had arrived at the $250,000 figure. In late April 1993 Officer Kishlansky transferred Mr. Tenzer's file to the IRS' offices in Brooklyn (the Brooklyn office serves Long Island, which is where Mr. Tenzer's assets were located). According to attorney Honecker's uncontradicted testimony, Officer Kishlansky informed him of the transfer and instructed him to wait until the Brooklyn office contacted him before resubmitting the offer (Tr. 435–36, 484–85). The Government does not deny that Officer Kishlansky so instructed attorney Honecker.

Attorney Honecker did not hear from the IRS again regarding this matter. In June 1993 a "914" freeze was placed on all efforts to collect Mr. Tenzer's tax liabilities, and on July 9, 1993 special agents Trezza and Gross informed Mr. Tenzer's attorneys that Mr. Tenzer's personal tax matters were under criminal investigation by the IRS.

According to our Court of Appeals the IRS was required to afford Mr. Tenzer a reasonable opportunity to create a payment plan. *Tenzer*, 127 F.3d at 227. The Government argues, and the Court of Appeals held, that Mr. Tenzer was given a reasonable length of time to comply. It appears to this Court

that the real issue is not whether a certain amount of time had passed,[1] but rather the issue is whether Mr. Tenzer was dealt with fairly and was provided with reasonable notification regarding the status of the negotiations. In this case the IRS returned Mr. Tenzer's offer in compromise ·as "not processable" with instructions to resubmit it, and then directed him to await a response from the Brooklyn office before submitting anything further. However, when another official of the IRS discovered that Mr. Tenzer may have been a party to an unrelated tax fraud by one of Mr. Tenzer's clients (JRD Management Corp.) which was then the subject of a criminal investigation, the IRS proceeded to commence a criminal prosecution against Mr. Tenzer without notifying him that the negotiations had been terminated and without ever finally accepting or rejecting his offer in compromise.

Mr. Tenzer made his offer in good faith and based on the advice of his expert counsel, attorney Honecker. The Court of Appeals held that Mr. Tenzer's good intentions were irrelevant to the question of whether he made a bona fide arrangement to pay. His intentions do appear to this Court to be relevant, however, to the question of whether his due process rights were violated in the negotiation of an offer in compromise. It seems to this Court that the IRS' unilateral decision to terminate negotiations with Mr. Tenzer without warning was unfair and was in violation of Mr. Tenzer's right to due process. Nonetheless this Court lacks the power to grant Mr. Tenzer's motion, simply because the issues which the motion raises have already been ruled on by the Court of Appeals. Under the mandate rule, derived from the law-of-the-case doctrine, "the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals." *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991).

■ This Court recognizes that the law of the case doctrine does not prevent a court from considering issues that were neither expressly nor implicitly decided already. *See DeWeerth v. Baldinger*, 38 F.3d 1266, 1271 (2d Cir.1994) (court may consider matters not explicitly or implicitly decided); *United States v. Cirami*, 563 F.2d 26, 32–33 (2d Cir.1977). Mr. Tenzer argues that the present motion to dismiss presents a different issue than that previously considered by our Court of Appeals. Specifically, he contends that because this Court ruled that the *filing* of the Offer in Compromise entitled Mr. Tenzer to the benefits of the voluntary disclosure policy, that the Court of Appeals never reached the question (presented in this motion) whether the IRS acted in an unfair and arbitrary manner by terminating the negotiations unilaterally without notifying Mr. Tenzer.

■ While this argument is attractive, this Court concludes that our Court of Appeals has already ruled on this issue, even if in an indirect way. The commission of a district judge does not extend to correcting the decisions of the Court of Appeals, or to placing a gloss on such decisions which would alter the practical outcome. "On remand, the doctrine of the law of the case is rigid: the district court owes obedience to the mandate of the Supreme Court or the court of appeals and must carry the mandate into effect according to its terms... If a district court disagrees with an appellate decision it should signal its disagreement but carry out the mandate." 18 Moore's Federal Practice § 134.23[1][a], [2] (3d ed.1997); *see also, e.g., Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

■ It is true that the Court of Appeals did not address the issue of Mr. Tenzer's due process rights, specifically holding that "[b]ecause we conclude that the district court erred in finding that Tenzer complied with the voluntary disclosure policy, we find it

---

1. When the IRS terminated negotiations with Mr. Tenzer by freezing collection efforts, approximately two months had elapsed from the date that he had received the letter declaring his offer not processable (this was because the February 26th letter was mailed not to attorney Honecker, as should have been done, but to Mr. Tenzer who did not receive it until April 10, 1993). The IRS recognizes that the average time for consideration of an offer in compromise is six months. *See* Internal Revenue Manual 57(10)2.1(d)(1), Ex. U.

**310**

unnecessary to reach that issue." *Tenzer*, 127 F.3d at 226, n. 1. It is also true that the Court of Appeals did not consider whether rejection is something different from returning as unprocessable, apparently a subtle distinction of the sort practiced only by the Internal Revenue Service; confusing to this Court and perhaps to the Court of Appeals as well. However, the Court of Appeals did hold that the IRS must give taxpayers a fair chance to comply with the voluntary disclosure policy:

> While the burden of making a bona fide arrangement rests principally on the taxpayer, we note that the government is obligated to negotiate in good faith with the taxpayer toward the end of achieving an arrangement to pay. An arrangement can only be made if the IRS agrees to it, but the IRS may not withhold its assent capriciously or in bad faith. The IRS must afford a taxpayer who has acted in reliance upon the voluntary disclosure policy a reasonable opportunity to satisfy all of the conditions of that policy, including a payment plan. If the parties cannot agree within a reasonable time on a suitable arrangement for payment, then the IRS is justified in refusing to treat that taxpayer as a voluntary discloser.

*Tenzer*, 127 F.3d at 227. The court then noted the low figure which Mr. Tenzer originally proposed and his subsequent plan to resubmit the same figure with an explanation, and held that Mr. Tenzer was given a fair chance to comply but failed to do so. This Court's personal disagreement with the Court of Appeals' conclusion is well supported by the defendant's most recent submissions.

The Court of Appeals did not rule directly on the question Mr. Tenzer now presents, and it was apparently unaware that Mr. Tenzer's offer was never "rejected" and that it remains pending to this day, although it has been returned as "not processable."[2] However, as part of its holding that Mr. Tenzer

had not made a bona fide arrangement to pay his tax liabilities, the Court of Appeals addressed the reasonableness of the IRS' actions in negotiating with Mr. Tenzer and found that "Tenzer was given ample opportunity, including a reasonable length of time, to comply with the voluntary disclosure policy." *Tenzer*, 127 F.3d at 227. Untrue or not, in light of this holding by our Court of Appeals, this Court may not now grant any relief in the matter.[3] The motion is denied.

Jury selection in this case is hereby set for June 1, 1998 at 9:30 am with trial to follow immediately. Defendant's counsel and the Government attorney shall confer forthwith to stipulate dates by which: (a) defendant will serve his expert's report and the curriculum vitae of his forensic psychiatrist upon the Government, with a copy of defendant's medical records; (b) defendant will submit to an examination by the Government's psychiatrist; (c) that the Government psychiatrist serve his or her report and curriculum vitae upon defense counsel; all to be accomplished within a reasonable time prior to trial. If defendant's treating psychiatrist or physician intends to testify, similar submissions shall be scheduled for that witness. If counsel are unable to agree on the stipulations, the Court will hold a conference on May 18, 1998 at 8:30 am at which defendant must be present, and a suitable schedule will be imposed by the Court. Failure to comply by any party will lead to preclusion. If defendant chooses to withdraw his Rule 12.2 Notice, he shall appear before the undersigned or a Magistrate Judge to confirm that any such withdrawal or waiver is in fact voluntary and given with a full understanding of his rights and the possible consequences of such withdrawal and waiver.

SO ORDERED.

---

2. An average citizen would think that no paper in the English language pertaining to taxes could ever be "not processable" by the IRS. However, there is much in the Code that the folks down on the stump-lots are not expected to understand.

3. Professor Moore's advice, quoted *supra* at p. 6, does not tell the district court exactly how to signal its disagreement. However, experience suggests that such signaling is futile, especially in a case where the Supreme Court has denied certiorari.