**UNITED STATES of America,**
**Appellee,**

v.

**James L. TENZER, Defendant–**
**Appellant.**

**Docket No. 99–1123**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 29, 1999

Decided: April 26, 2000

Marion Bachrach, New York, NY (Depetris & Bachrach, of Counsel), for Defendant–Appellant.

Cynthia Keeffe Dunne, New York, NY, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Peter G. Neiman, Ira M. Feinberg, Assistant United States Attorneys, of Counsel), for Appellee.

Before: FEINBERG, MINER and SACK, Circuit Judges.

FEINBERG, Circuit Judge:

James L. Tenzer appeals from a judgment of conviction entered in February 1999 in the United States District Court for the Southern District of New York (Charles L. Brieant, J.) on an information charging him with four misdemeanor counts of failure to file timely tax returns for the years 1987–1990 in violation of 26 U.S.C. § 7203. The case comes before this court for the second time. In the first appeal, the government sought reversal of the district court's order dismissing the information because Tenzer's offer in compromise, submitted pursuant to the voluntary disclosure policy of the Internal Revenue Service (IRS), had been improperly turned down. We reversed, holding that Tenzer's offer did not meet the requirements of that policy. *United States v. Tenzer*, 127 F.3d 222 (2d Cir.1997)("*Tenzer I*"). On remand, Tenzer again sought dismissal, based on allegedly new evidence produced by the government, but the district court held that the "mandate rule" precluded it. 4 F.Supp.2d 306, 310 (S.D.N.Y.1998). Following a conditional guilty plea, Judge Brieant sentenced Tenzer to a year and a day incarceration, but declined to depart downward. Tenzer now appeals from his conviction and sentence. Tenzer argues that (1) the new evidence produced by the government on remand merits the reconsideration of our decision in *Tenzer I*; and (2) Judge Brieant did not fully understand his authority to downwardly depart. For the reasons set forth below, we affirm the conviction and remand for reconsideration of the sentence.

## I. Background

A complete account of the events leading up to Tenzer's prosecution was set forth in *Tenzer I*, and the two district court opinions issued in this case, 950 F.Supp. 554 (S.D.N.Y.1996) and 4 F.Supp.2d 306 (S.D.N.Y.1998), familiarity with which is assumed. We summarize below the facts and proceedings germane to the present appeal.

### A. The Civil Proceedings

Tenzer is an experienced tax attorney and one of the principals of Margolin, Winer and Evens (MW & E), a large accounting firm in Long Island, New York. It is uncontested that during the four years covered by the information, Tenzer earned substantial income but did not pay any tax. In October 1991, the IRS notified Tenzer that his account had been referred to the enforcement section and that he could still avoid enforcement action if he filed all his delinquent returns and paid all outstanding taxes within 10 days, or if he immediately contacted the IRS. Tenzer's attorney, Myron Weinberg, contacted the IRS and requested an extension of time for filing the returns, which the IRS granted. In February 1992, Tenzer filed complete and accurate returns for three of the years involved (1987–1989), but did not enclose any payments.

In October 1992, Tenzer began negotiating a payment plan with IRS revenue officer Elizabeth Kishlansky. At that time, Weinberg advised Kishlansky that Tenzer wanted to enter into an installment agreement with the IRS. Kishlansky notified Weinberg that the IRS would not consider any installment plan unless Tenzer immediately filed his delinquent 1990 and 1991 returns. Tenzer filed those returns in November 1992.

In January 1993, Kishlansky again met with Tenzer's lawyers, including Ernest Honecker, formerly a high-ranking attorney for the IRS, to discuss Tenzer's payment plan. At that meeting, Tenzer's lawyers sought assurances from Kishlansky that Tenzer's case was being handled as a civil matter. Tenzer's attorneys also informed Kishlansky that rather than enter into an installment plan with the IRS, whereby all delinquent payments would be made, Tenzer intended to make an "offer in compromise," that is, a partial payment in settlement of his tax liabilities. Kishlansky responded that such an offer would only be considered if Tenzer became current on his taxes due for 1992, and if the offer reasonably reflected his assets and potential earnings. Tenzer's lawyers then proposed $250,000 in compromise of his tax liability. Kishlansky indicated that she thought this amount would be unsatisfactory and that a more reasonable offer would be around $600,000. Nevertheless, when Tenzer submitted his $250,000 offer in a letter dated February 5, 1993, along with a $5000 payment, Kishlansky did not reject it but forwarded it to the IRS service center in Maine for review.

In early April 1993, the IRS returned Tenzer's offer in compromise letter, as well as the $5000 payment, as "unprocessable." The letter returning the offer explained that "for offers based on inability to pay, you must generally offer an amount equal to or in excess of the amount shown as 'equity in assets' on your financial statement(s)." The letter also invited Tenzer to amend his offer. On April 14, 1993, Honecker wrote a letter to the IRS disclosing his intention to resubmit the same offer in compromise, and explaining that $250,000 was a reasonable amount in light of the "forced sale" value of Tenzer's non-liquid assets. Later that month, Kishlansky notified Honecker that Tenzer's file was being transferred to the IRS office in Brooklyn, which covered the region where most of Tenzer's assets were located. Kishlansky also advised Honecker not to resubmit the offer until he was contacted by that office. At this point, all communication between Tenzer and the IRS regarding civil collection of his taxes ceased.

## B. The Criminal Proceedings

In late June 1993, a "freeze" was placed on Tenzer's file halting any further collection efforts. The freeze was ordered by the IRS criminal investigation division, as a result of a separate investigation into criminal tax evasion by JRD, a corporate client of Tenzer's accounting firm.[1] It was not until several weeks later that Tenzer's attorneys learned of the freeze and that Tenzer was now a subject of an IRS criminal investigation. The collection freeze on Tenzer's file was not lifted until February 25, 1999, shortly after Tenzer was sentenced by the district court.[2]

In November 1994, consultation between agents of the IRS and the tax division of the Department of Justice led to a recommendation that Tenzer be prosecuted for his failure to timely file his tax returns. The recommendation reflected the IRS's conclusion that Tenzer did not meet the criteria of the voluntary disclosure policy. That policy provides that where a delinquent taxpayer comes forward and either pays or makes a bona fide arrangement to pay the applicable taxes, the IRS will not recommend prosecution. As a result of this policy, non-filers are seldom prosecuted. Nevertheless, in November 1995, the Justice Department charged Tenzer in the

---

1. JRD became the subject of an IRS investigation in July 1991. In connection with that investigation, MW & E was served with a grand jury subpoena. In 1993, after substantial discovery was collected in the JRD case, the government suspected that Tenzer may have aided and abetted JRD's tax fraud and expanded its investigation to include him. Tenzer was never charged with any wrongdoing involving JRD.

2. The letter lifting the freeze indicates that the IRS is now willing to negotiate Tenzer's offer in compromise. Importantly, that offer was amended by Honecker to $450,000 in a letter dated January 15, 1999.

four-count information that led to this appeal.

Subsequently, Tenzer moved to dismiss the information. Tenzer argued that he had satisfied the requirements of the voluntary disclosure policy, and that by initiating criminal proceedings against him, the IRS failed to follow its own policy, thereby violating his due process rights. Following a four-day evidentiary hearing, the district court agreed and dismissed the information. The court reasoned that although Tenzer's initial offer in compromise was "laughable," he had intended in good faith to reach an acceptable compromise agreement with the IRS and thus complied with the voluntary disclosure program. 950 F.Supp. at 562. The district court further concluded that the policy, which was widely publicized, afforded Tenzer due process rights, and that those rights were violated when the government decided, without affording Tenzer any advance notice, to freeze the civil collection effort and to prosecute him. *Id.* at 563. The district court also noted that Tenzer's prosecution was "unique in the regular day to day administration of the [voluntary disclosure] Policy." *Id.*

### C. *Tenzer I*

In September 1997, we reversed the dismissal of the information, holding that prosecution was not barred because Tenzer did not comply with the voluntary disclosure policy. 127 F.3d at 226. Because we held that Tenzer did not comply with the policy, we found it unnecessary to decide whether the policy afforded Tenzer any due process rights and whether those rights were violated by the IRS. *Id.* at 222 n. 1. The panel held that an "arrangement to pay" under the voluntary disclosure policy "may be a great variety of things, e.g., an installation payment agreement, a

promise to pay on a specific date, or an offer of a lump-sum payment in compromise." *Id.* at 227. We also concluded that "under the express language of the policy, the 'bona fide arrangement' must have been 'made' for the policy to apply." *Id.* Because Tenzer's offer had not been accepted by the IRS at the time he became the subject of a criminal investigation, his prosecution was not barred. Although we remarked that the government must negotiate in good faith toward the goal of achieving a settlement with the taxpayer, we found that in this case the government had provided Tenzer with sufficient opportunity to make an acceptable offer, and that he had not made such an offer. We concluded that "having thoroughly failed to bring himself within the letter of the voluntary disclosure policy, Tenzer cannot now claim the benefits of any protection it affords." *Id.* at 228.[3] Thus, we reversed the district court's dismissal of the information and remanded to the district court.

### D. Proceedings on Remand.

In the district court on remand, the government produced a new piece of evidence that prompted Tenzer to renew his motion to dismiss the information. The new evidence, a one-page computer-printout from the IRS processing center in Maine, shows that defendant's offer in compromise was "pending," as opposed to "rejected." The printout included a notation by one IRS official to another demonstrating, Tenzer argues, that the IRS expected resubmission of his offer.[4] On this basis, Tenzer argued to the district court that the IRS's return of Tenzer's first offer as "unprocessable" is different from a return of the offer as "rejected." Since this distinction was not made clear on the previous appeal, Tenzer's argument went,

---

**3.** We denied Tenzer's petition for rehearing in November 1997. The Supreme Court denied Tenzer's petition for a writ of certiorari in April 1998. *Tenzer v. United States,* 523 U.S. 1096, 118 S.Ct. 1580, 140 L.Ed.2d 795 (1998).

**4.** The notation reads: "terry (see ruth when this comes back from tp [i.e. taxpayer])."

this court's decision in *Tenzer I* was based on the erroneous assumption that Tenzer's offer was "firmly (and predictably) rejected." 127 F.3d at 227. Additionally, Tenzer urged the district court to rule that the IRS denied him due process by failing to continue the settlement negotiations with him—an issue, as already noted, that the panel in *Tenzer I* did not decide.

In a written opinion, Judge Brieant refused to grant Tenzer's renewed motion to dismiss the information. The opinion stated that "[i]t seems to this Court that the IRS' unilateral decision to terminate negotiations with Mr. Tenzer without warning was unfair and was in violation of Mr. Tenzer's right to due process." 4 F.Supp.2d at 309. But citing the "mandate rule," Judge Brieant held that "[w]hile this argument is attractive, this Court concludes that our Court of Appeals has already ruled on this issue, even if in an indirect way. The commission of a district judge does not extend to correcting the decisions of the Court of Appeals, or to placing a gloss on such decisions which would alter the practical outcome." *Id.*

Thereafter, Tenzer entered a conditional guilty plea to all four counts of the information pursuant to Fed.R.Crim.P. 11(a)(2), reserving his right to appeal the district court's denial of his motion to dismiss and to appeal his sentence. The plea agreement set forth Tenzer's net offense level at 13 and his criminal history category as I.

At sentencing, Tenzer moved for a downward departure on various grounds that he claimed took this case out of the heartland of the sentencing guidelines. The most contentious of these concerned Tenzer's claim that his prosecution was unfair and in violation of his due process rights. Consistent with his two prior published opinions in this case, Judge Brieant stated at the sentencing proceeding, "I believe that the entire prosecution here is essentially unfair and in violation of public policies adopted by the Internal Revenue Service...." In ultimately refusing to de-

part on this ground, however, Judge Brieant explained, "I do not believe that these issues alone or taken together provide a reasonable basis for the Court to depart downwardly in Mr. Tenzer's case.... [W]hile courts have considerable power in connection with the fashioning of a sentence, a court must honor the mandates and decisions of the Court of Appeals, even when they're totally wrong." Judge Brieant also considered and rejected other grounds for departure. Tenzer was sentenced to concurrent terms of 12 months on counts one and two, and to concurrent terms of one day on counts three and four, making the total sentence a year and a day, at the bottom of the applicable guidelines range of 12 to 18 months. This appeal followed.

## II. Discussion

### A. Reconsideration of *Tenzer I*

We turn first to Tenzer's claim that new evidence supports reconsideration of our decision in *Tenzer I* under an exception to the law of the case doctrine. That doctrine has two principal prongs. Under one, a court of appeals must usually adhere "to its own decision at an earlier stage of the litigation." *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.1983) (quoting *United States v. Cirami*, 563 F.2d 26, 33 n. 6 (2d Cir.1977)). We have stated that "we will not depart from this sound policy absent 'cogent' or 'compelling' reasons. The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe*, 709 F.2d at 789 (internal citations and quotations omitted); see also *United States v. Fernandez*, 506 F.2d 1200, 1203 (2d Cir.1974). Nonetheless, "this branch of the doctrine, while it informs the court's discretion, does not limit the tribunal's power." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir.1991) (citation and quotations omitted).

■ The other prong of the "law of the case" doctrine, commonly referred to as the "mandate rule," describes the duty of the district court on remand. "When an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue...." *Cirami*, 563 F.2d at 32. We believe that, in refusing to dismiss the information, Judge Brieant correctly adhered to our prior decision, even though he evidently felt that the new evidence supported his disagreement with that decision.

■ However, the law of the case doctrine does not bind us with the same rigidity as it binds the district court. Thus, we are free to reconsider our holding in *Tenzer I*, if, as Tenzer claims, the new evidence sheds substantial doubt on that decision. As described above, the new evidence consists of a computer printout listing Tenzer's offer in compromise as "pending," rather than as "rejected." Tenzer argues that this evidence contravenes our finding in *Tenzer I* that "[Tenzer's offer of $250,000] was firmly (and predictably) rejected," 127 F.3d at 227, and that this finding led us to conclude that Tenzer's negotiations with the IRS had ended and that no "arrangement to pay" would be reached. Tenzer further argues that this error was fueled by the government's representation at oral argument in the prior appeal that the IRS rejected Tenzer's offer "out of hand." By contrast, Tenzer argues, the computer printout demonstrates that the IRS did not consider its negotiations with Tenzer to have ended and that Tenzer's offer was not "rejected."

The government responds that there is nothing new in the evidence relied on by Tenzer. First, it is not surprising that Tenzer's case-file was designated as "pending," since the collection efforts on it had been frozen pending resolution of the criminal proceedings, as required by IRS regulations. Further, whether Tenzer's offer was "rejected," or "returned as unprocess-able," was not material to our prior holding that an arrangement to pay had not been made, and therefore Tenzer could not enjoy the protection of the voluntary disclosure policy.

This court has previously reconsidered its decisions when presented with compelling new evidence. See *Cirami*, 563 F.2d at 33–35 (new "extraordinary" evidence of attorney negligence supported reconsideration); *Fernandez*, 506 F.2d at 1204 (reconsidered holding because new evidence conclusively contradicted government's previous representation); but see *United States v. Adegbite*, 877 F.2d 174, 179 (2d Cir.1989) (declining to reconsider a previous *Miranda* holding based on new evidence concerning officer motivation in questioning suspect).

After carefully considering Tenzer's arguments and the district court's second opinion, we conclude that the new evidence does not warrant reconsideration of this court's previous decision in this case. The holding in *Tenzer I* was premised on Tenzer's failure, from the time he was notified of his tax delinquency to the time he submitted his first offer, to arrive at an arrangement to pay that was satisfactory to the IRS. The *Tenzer I* panel had before it the letter from the IRS returning Tenzer's first offer in compromise and the payment attached thereto. The court stated "[t]he IRS subsequently returned the check and rejected the offer as being 'unprocessable' because it was below the minimum amount." 127 F.3d at 224. Although the court did not distinguish between "return as unprocessable," and "rejection," it clearly understood, as Tenzer had at the time he received the letter, that Tenzer could attempt to restart the negotiations by submitting another offer. In other words, the court was aware that the return of Tenzer's first offer did not necessarily mark the end of the negotiations between Tenzer and the IRS. The point was not how we chose to characterize the IRS's response to Tenzer's initial offer, but rather our conclusion that it was not a bona fide

offer, that Honecker's proposed resubmission was unlikely to change the situation, and that, at this point, the IRS was entitled to refer the matter to the DOJ for prosecution. The court stated that "it is clear that Tenzer was given ample opportunity, including a reasonable length of time, to comply with the voluntary disclosure policy, yet repeatedly failed to do so." [5] *Id.* at 227.

While Tenzer, and Judge Brieant, evidently disagree with the panel's conclusion in *Tenzer I*, the new evidence does not undermine it. The new evidence does not refer to the time period relevant to our prior decision, namely the period leading up to and including the return of Tenzer's first offer in compromise. Thus, it does not change the fact that no arrangement to pay had been *made*. Rather, it simply raises the speculative prospect that had the negotiations continued, they might (or might not) have resulted in an agreement between Tenzer and the IRS at some point down the line. Such speculation is not an appropriate basis for reconsideration.

Since we do not disturb our holding in *Tenzer I* that Tenzer did not comply with the voluntary disclosure policy, we again find it unnecessary to decide whether the policy afforded Tenzer any due process rights and whether those rights were violated by the IRS.

## B. Sentencing

▉▉▉ We now turn to Tenzer's claim that the district court misunderstood its authority to downwardly depart in sentencing. This aspect of the appeal involves two important doctrines: the mandate rule and the "substantial deference" due a district court judge in determining whether a departure from the sentencing guidelines is warranted. See *Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996). We believe that, on the record before us, the latter policy controls the outcome of this part of the appeal. Our dissenting brother believes that the former does. We remand for reconsideration of the sentence because we conclude that the district judge also believed, in error, that the mandate rule precluded the exercise of his discretion with regard to a downward departure on certain grounds.

In the district court, Tenzer argued that downward departure was warranted in his case principally because of: (1) his voluntary disclosure to the IRS; (2) the prejudice caused by unfair actions taken by the prosecution and its agents; and (3) extraordinary rehabilitation and acceptance of responsibility. At sentencing, Judge Brieant opened his remarks on departure by noting, somewhat hyperbolically, that "courts in this Circuit have finally gained unlimited power to depart downwardly." Nevertheless, when he turned to consider Tenzer's first two claims, the judge concluded that he could not depart because of our mandate in *Tenzer I*. Specifically, the judge stated that although he believed Tenzer "was entitled to the benefits of [the voluntary disclosure] policy," that could not "provide a reasonable basis for" a departure because "a court must honor the mandates and decisions of the Court of Appeals." In this connection, Judge Brieant also found that to the extent that Tenzer has "been treated unfairly by the government . . . this has . . . already been a matter of appellate review," and so is not a proper basis for departure. The judge concluded his ruling on this point by stating: "simply because I believe that generalized fairness requires that the Court take some step in connection with a downward departure," doing so would amount to "a nullification by departure." Also in connection with Tenzer's claim that his prosecution was unfair, the judge correctly

---

**5.** In support of this conclusion *Tenzer I* relied on Tenzer's failure to follow many of Kishlansky's directives towards complying with the policy: becoming current on his 1992 taxes, making monthly payments towards his tax liability, and making a substantial offer in compromise (approximately $600,000).

noted that his disagreement with the use of prosecutorial discretion in this case was not an appropriate basis for departure. The judge then considered and rejected Tenzer's third claim in support of a downward departure.[6]

 It is well settled that a district court's refusal to grant a downward departure is generally not appealable. *United States v. Labeille–Soto*, 163 F.3d 93, 100 (2d Cir.1998). We have carved out an exception to this rule for "cases in which the sentencing judge mistakenly believes that he or she lacks authority to grant a given departure." *United States v. Clark*, 128 F.3d 122, 124 (2d Cir.1997). Although we normally presume that the district court understands the scope of its authority, we have held that "this presumption can be overcome where the record provides a reviewing court with clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority." *Id.* (internal citation and quotation marks omitted); see also *United States v. Montez–Gaviria*, 163 F.3d 697, 705 (2d Cir.1998). Tenzer argues, and we agree, that the passages from Judge Brieant's colloquy reproduced above constitute the "clear evidence of a substantial risk" that the judge may not have fully understood his authority to depart in this case.[7]

Judge Brieant's concern with "nullification by departure" led him to interpret the mandate rule too broadly. A corollary to the mandate rule we discussed above, see *supra* at 39–40, is that "upon remand the trial court may consider matters not expressly or implicitly part of the decision of the court of appeals." *Cirami*, 563 F.2d at

33. Because the appeal in *Tenzer I* came from an order dismissing the information, the panel there had no occasion to decide any issues concerning sentencing, including any possible bases for departure. See *United States v. Salemi*, 46 F.3d 207, 209 (2d Cir.1995)(district court may impose a sentencing enhancement on remand based on factors not considered in the previous appeal); *Uccio*, 940 F.2d at 757–58 (same).

The panel in *Tenzer I*, 127 F.3d at 227, concluded that Tenzer did not qualify for the voluntary disclosure policy because "an arrangement" to pay had not been "made" at the time negotiations with the IRS ceased and the government decided to prosecute. That conclusion cannot be challenged by the district court. However, the court may consider certain aspects of Tenzer's case that, although irrelevant for purposes of conviction, may well be relevant for purposes of sentencing. For instance, the court in *Tenzer I* noted that the voluntary disclosure policy is not satisfied by "mere offers to make payments." *Id.* It also noted that, for purposes of the policy, "it is irrelevant that a taxpayer intends to eventually reach an agreement," and that, therefore, "Tenzer's alleged good intentions" were not an appropriate basis for dismissal. *Id.* These factors, however, may be considered by the district judge in his evaluation of the sentence if he believes them to be "mitigating circumstances of a kind, or a degree, not adequately taken into consideration by ... the [sentencing] guidelines." U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b) (1994)). Indeed, it is quite conceivable that—as occurred here—after a taxpayer makes a complete disclosure of his tax liabilities, and offers to settle with the IRS, negotiations with the

---

6. The district court stated that it did not believe Tenzer's rehabilitation had been extraordinary. The court noted that acceptance of responsibility was already taken into account by the guidelines. Finally, the court also addressed "self-destructive procrastination" and "diminished capacity" as possible bases for departure, but declined to depart on those grounds. We do not disturb any of these findings.

7. As the dissent's extensive quotations from the colloquy demonstrate, Judge Brieant was quite thorough in his sentencing of Tenzer. His thoroughness on some factors, however, cannot undo his failure to seriously consider others.

IRS nevertheless break down, and the IRS appropriately decides to proceed with a criminal prosecution. That does not mean that the district judge cannot then take into account at *sentencing* the taxpayer's intentions and the conduct of the parties during the negotiations.

■ We have held previously that "absent express prohibition, a sentencing court 'is free to consider, in an unusual case, whether or not the factors that make it unusual ... are present in sufficient kind or degree to warrant a departure.'" *United States v. Core*, 125 F.3d 74, 77 (2d Cir.1997) (citing *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993) (Breyer, C.J.)), cert. denied sub nom. *Reyes v. United States*, 522 U.S. 1067, 118 S.Ct. 735, 139 L.Ed.2d 672 (1998); see, e.g., *United States v. Brennick*, 134 F.3d 10, 14 (1st Cir.1998) (noting that taxpayer's intent to pay and temporary delay in payment might support a departure); see also U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b) (1994)).

Judge Brieant's sentencing colloquy and his two opinions clearly indicate that *he* thought certain elements present in Tenzer's case were unusual. In his first opinion, in which he dismissed the information because he concluded that Tenzer's rights under the voluntary disclosure policy had been violated, Judge Brieant stated that "it is fair to say that Tenzer's case is unique in the regular day to day adminis-

tration of the policy." 950 F.Supp. at 563. In his second opinion, issued after the remand in *Tenzer I*, the judge noted that he felt "Tenzer was [not] provided with reasonable notification regarding the status of the negotiations," and that "the IRS' unilateral decision to terminate negotiations with Mr. Tenzer was unfair...." [8] 4 F.Supp.2d at 309. In his sentencing colloquy, the judge again noted that this issue continues to be "of some concern to the Court." It is entirely consistent with the precedent in this Circuit granting district court judges discretion in sentencing to allow this district court judge to depart downwardly if he finds that this case is sufficiently unusual or that it falls out of the heartland.[9] See, e.g., *Core*, 125 F.3d at 77.

The dissent argues that by allowing the district court to consider certain aspects of this case for purposes of sentencing, we are, in effect, attempting "to revise," or allowing the district court and Tenzer "to revise, the factual predicate for Tenzer's offenses." Dissent at 45, 47. This is not so. The "factual predicate" referred to is that Tenzer "failed to make the necessary and timely arrangements required for compliance with the voluntary disclosure policy." Dissent at 47. We do not suggest that the district court can make different factual findings on that issue. But it is not inconsistent with *Tenzer I* for Tenzer to admit, as he fully does, that he violated the law

---

**8.** Indeed, it is undisputed that Tenzer's first offer in compromise was returned to him with instructions to resubmit and that he was then directed to await further instructions before resubmitting it. Two months later, instead of receiving further instructions, Tenzer was notified that a freeze was placed on his file and that his case was now handled as a criminal matter. *Tenzer I*, 127 F.3d at 225, 4 F.Supp.2d at 306. Tenzer argues that this two-month hiatus prejudiced him and is a factor to be considered by the district judge in sentencing. The dissent appears to argue that Tenzer's "own criminal activity and procrastination" prevented him from negotiating in this two-month period. Dissent at 47. But it is clear that the IRS expected Tenzer to submit another offer, and it is at least arguable

that Tenzer's inaction at this time was due to the IRS's advice to wait until the Brooklyn office contacted him. We do not see why the judge cannot consider this argument. It is for him in the first instance, and not for us, to take such factors into account for purposes of sentencing.

**9.** Among the many things the judge said in his sentencing colloquy, he noted that in some sense Tenzer's case is more serious than the heartland of failure to file cases. This is because Tenzer's failure to file spanned six years, and, according to the judge, he "beat the tax" on one year. The judge may conclude that this fact undermines the appropriateness of a departure in this case.

by failing to file his federal income tax for six years and still argue that his attempted entry into the IRS's voluntary disclosure program, albeit unsuccessful in the end, can be taken into account for sentencing. Further, the district court should not be precluded from considering whether the IRS's decision to terminate negotiations, despite its previous signals to Tenzer, see supra n. 8, was unfair in light of its usual administration of the voluntary disclosure policy. As the district court pointed out, such a finding is distinct from *Tenzer I's* holding that Tenzer was given a reasonable length of time to comply with the policy.

In sum, we do not now decide whether any of these factors, taken individually or together, constitute an appropriate basis for departure; we simply hold that their consideration has not been ruled out by our mandate in *Tenzer I.* The district court is in the best position to evaluate, in the first instance, whether a downward departure is appropriate. See *Koon*, 518 U.S. at 98, 116 S.Ct. at 2047 (discussing the district court's "institutional advantage" in determining whether a factor is sufficiently exceptional to warrant a departure). If the district court, upon reconsideration, concludes that the present record does not support a downward departure, it is free to leave the sentence undisturbed.

### III. Conclusion

For the reasons set forth above we affirm the judgment of conviction and remand the district court's sentencing decision for reconsideration consistent with this opinion.

MINER, Circuit Judge, dissenting in part:

Because it seems clear to me that the experienced and knowledgeable district court judge well understood the scope of his discretionary departure authority and properly chose not to exercise it, I respectfully dissent from so much of the majority opinion as remands for reconsideration of the sentencing decision in this case. My colleagues contend that this case involves two competing doctrines: the mandate rule and the substantial deference due a district court's departure decision. While I do not concede that these doctrines are necessarily in competition in this case, I think that the application of either doctrine requires affirmance of the district court decision.

The appellant, an experienced tax attorney and accountant, was convicted on his plea of guilty to a four-count Information charging willful failure to timely file income tax returns. There is no dispute that Tenzer failed to timely file his personal income tax returns for the years 1987 through 1990, or pay any taxes for those years. At the time he made his formal offer in compromise in the amount of $250,000, Tenzer's tax liability was approximately $1.3 million. Although the district court first dismissed the Information on the ground that appellant had satisfied the IRS's voluntary disclosure policy and therefore was immune from prosecution, we reversed on a finding that the offer in compromise submitted by the appellant was too little and too late to constitute compliance with the policy. *See United States v. Tenzer*, 127 F.3d 222 (2d Cir. 1997).

The voluntary disclosure policy of the IRS offers immunity from criminal prosecution to those who voluntarily disclose their tax violations under certain conditions. One condition is that the taxpayer either pay, or make bona fide arrangements to pay, the applicable taxes and penalties. Since Tenzer had considerable assets at the time he got around to making his offer in compromise, he was advised by the IRS that a reasonable offer would be $600,000. Tenzer made an offer of $250,000, and, when the offer was rejected for failure to include all assets, indicated that he would resubmit the same offer. *See id.* at 224–26.

During his protracted discussions with the IRS, Tenzer failed to become current on accruing tax liabilities, and his stalling tactics were apparent to those involved in the processing of his case. All this is by way of answering the majority opinion's apparent attempt to revise (or allow the district court to revise) the factual predicate for Tenzer's offenses. We already have dealt with Tenzer's voluntary disclosure defense: "[I]t is clear that Tenzer was given ample opportunity, including a reasonable length of time, to comply with the voluntary disclosure policy, yet *repeatedly* failed to do so." *Id.* at 227 (emphasis supplied). We have no occasion to revisit our conclusion that the district court erred in finding that Tenzer had made a bona fide offer to pay.

On remand, Tenzer entered a plea of guilty, admitting in any event his guilt of all the offenses with which he was charged. On the date of sentencing, the learned district court judge reviewed at great length the factors bearing on the sentence that he eventually imposed. Indeed, the detailed review of what the court characterized as "the issues presently tendered in connection with this sentencing" consumed some fifteen pages of transcript. With regard to Tenzer's request for a downward departure, the district court prefaced its remarks as to the arguments made in that regard as follows:

> The Court now has to consider the various different bases upon which the Court is being asked to depart downward and I have to start off by noting that there's no question that the courts in this Circuit have finally gained unlimited power to depart downwardly on almost any rational basis which can be offered, and this is being done day in and day out in the district. The only issue, however, which has to be resolved by the Court, is whether the case presents a combination of facts constituting the kind or degree of mitigating circumstances not adequately taken into con-

sideration by the [Sentencing] Commission.

The district court concluded its examination of the departure issue as follows:

> So essentially I've considered all of the arguments being made, even those that I've not commented on, and I've concluded that I should not depart downwardly as a matter of discretion and in the public interest and so I decline to do so.

Between the beginning and the end of its discussion of the arguments for downward departure, the district court touched on many factors, rejecting all of them as a basis for the departure sought. First and foremost, according to the district judge, was the claim "that the government violated Mr. Tenzer's constitutional rights of due process by not giving him the full benefit of a highly publicized voluntarily (sic) disclosure policy which was being given to a number of other people similarly situated." The district judge rejected Mr. Tenzer's claim. Giving vent to his opinion "that the entire prosecution here is essentially unfair" and contrary to policies adopted and publicized by the IRS, the district judge nevertheless made the following statement: "I do not believe that these issues alone or taken together provide a reasonable basis for the Court to depart downwardly in Mr. Tenzer's case." Moreover, the district court opined that a judge should not "engage in nullification by departure" in sentencing merely because of its view "that the Court of Appeals panel opinion in this case was unfair or wrong" or because "generalized fairness" requires a departure to rectify an unfair appellate decision.

Second, the district court "somewhat regretfully" declined to find a due process violation in the decision of the United States Attorney to prosecute Tenzer, acknowledging that prosecutorial discretion is confided to the United States Attorney. Next the district court rejected "the claim of so-called self-destructive procrastination" as a basis for downward departure.

Although the court derived from its reading of the pre-sentence memorandum that this claim was being made, the court apparently was advised by counsel that this was not so. Nevertheless, the court noted that procrastination "certainly doesn't show up in [Tenzer's] work or life achievements and the Court does not believe that his psychological problems, whatever they are, rise to the level of justifying ... a downward departure."

The district court then addressed diminished capacity as a ground for downward departure. Although uncertain whether this claim had in fact been advanced, the district court opined that in any event it "would not find substantiation adequate to support the exercise of its discretion to downwardly depart on that ground." The court then turned to evidence of Tenzer's good character, his honesty in dealing with clients and colleagues, his high ethical standards in his professional practice and his pro bono work. The district court stated that those matters would be considered "in determining a sentence within the Guideline range." At this point in its review of departure factors, the court commented that this was a case outside the "heartland" of the Sentencing Guidelines in a way quite detrimental to Tenzer:

> Very few people that this Court knows of or has seen have skipped four years in a row where they had such a substantial income and here's a defendant who has been late as to six years and beat the tax on one of them because it became time-barred and he is, himself, a fully informed tax professional.

The district court concluded its review of the various bases for downward departure by rejecting Tenzer's rehabilitation as "not extraordinary in any way" and by rejecting the acceptance of responsibility factor as already credited in the Guidelines computation.

We presume that a trial judge knows the potential grounds for Guidelines departures. *See United States v. Diaz,* 176 F.3d 52, 121–22 (2d Cir.1999). That presumption is only rebutted "in the rare situation" where there is "clear evidence of a substantial risk that the judge misapprehended the scope of his departure authority." *United States v. Brown,* 98 F.3d 690, 694 (2d Cir.1996). The majority is of the opinion that the distinguished trial judge seems to have misunderstood the scope of his authority to depart in this case. How can this be so? The district judge thought (mistakenly) that he had "*unlimited* power to depart downwardly on almost any rational basis which can be offered." (emphasis supplied). Can a judge who sees almost no restriction on his authority to downwardly depart be said to "misapprehend" the depth of his authority in that regard? I do not think so. What we have is a district judge who apprehended more power than he had but chose not to exercise it. Our court has established a bright-line rule that only when the district court does not realize that it has authority to depart under the Guidelines is the denial of a downward departure reviewable at all.

The majority opines that the district court misunderstood the scope of its authority to "take into account at *sentencing* the taxpayer's intentions and the conduct of the parties during the negotiations." *See supra* at 43. As previously noted, I do not agree that the district court misunderstood the scope of its departure authority except to the extent that it thought it had more authority than it did. Beyond that, I simply cannot subscribe to the majority view that Tenzer may have had good intentions with respect to his offer in compromise or that the government was somehow at fault in its conduct of "negotiations" with Tenzer. In the first place, there simply were no negotiations to be terminated at the time there was a decision to prosecute. If negotiations were indeed ongoing, then Tenzer would not have been out of compliance with the requirements of the voluntary disclosure policy. *See Tenzer,* 127 F.3d at 227. ("If the parties cannot agree within a reasonable time on a suitable arrangement for payment, then the

IRS is justified in refusing to treat that taxpayer as a voluntary discloser.").

Our prior decision to remand tells the true story: Tenzer's counsel was prepared to resubmit the previously rejected offer of $250,000; no taxes were paid for 1992 as required to keep current; Agent Kishlansky and her supervisor concluded that Tenzer was not attempting in good faith to pay his taxes, but rather was engaged in stalling tactics; Tenzer's file was transferred to another office, and he was instructed to forego his *resubmission* until further notice; Tenzer's attorney was not contacted regarding the resubmission, but he was informed that a criminal investigation was under way. *See id.*, 127 F.3d at 224–25. At that point, Tenzer was prevented from jerking the IRS chain any longer, it already being apparent to all concerned that he was a candidate for criminal prosecution. The majority says that these may be "mitigating" circumstances. How can this be so? The circumstances that prevented Tenzer from negotiating were his own criminal activity and procrastination. That was the tenor of our previous opinion, and the district judge correctly understood our view of these circumstances when he imposed sentence.

By his guilty plea, Tenzer admitted that he failed to make the necessary and timely arrangements required for compliance with the voluntary disclosure policy. That factual predicate for his plea is what Tenzer now seeks to revise, and the majority opinion gives him permission to do so. While it is true that our previous decision did not consider the circumstances of Tenzer's offer in the context of sentencing, it did clearly indicate that there were no "negotiations" pending at the time the case was referred for criminal prosecution. Tenzer was waiting only for the opportunity to submit a previously rejected proposal. The majority would allow the district court to "consider[ ] whether the IRS's decision to terminate negotiations, despite its previous signals to Tenzer, ... was

unfair in light of its usual administration of the voluntary disclosure policy." *See supra* at 44. But this would permit the district court to go against the established facts. Tenzer made no effort to comply with the voluntary disclosure policy, so there was no effort that could be "terminated" by the government. Accordingly, there was no "unfair" decision by the IRS, and it just makes no sense to me to allow the district court on remand to make a different factual finding.

In accordance with the Sentencing Commission formulation that each guideline should be considered as carving out a heartland or a set of typical cases, we have held that a court confronted with an atypical case, differing significantly from the norm, may consider whether a departure is warranted. *See United States v. Milikowsky*, 65 F.3d 4, 7 (2d Cir.1995). We have adopted the rule that district courts may determine, in unusual cases, whether the established facts that make the cases unusual " 'are present in sufficient kind or degree to warrant a departure.' " *United States v. Core*, 125 F.3d 74, 77 (2d Cir. 1997) (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993)). What we have never said is that a given set of accepted facts establishing the crime may be replaced by another set of facts for the purpose of sentencing.

On the issue of good intentions, the majority cites *United States v. Brennick*, 134 F.3d 10 (1st Cir.1998), in support of its decision to remand. In that case, the First Circuit held that a district court had authority to depart downwardly in the case of a taxpayer charged with failure to pay wage withholding and social security taxes upon a showing of an "intent to delay payment only briefly." *Id.* at 14. Such a showing was said to "take the case out of the heartland." *Id.* That holding does not support my colleagues' position because it involved the making of new and distinct factual findings, not a contradiction of facts previously established. The intentions of Tenzer have been shown to be anything

but good. As to Tenzer's intentions in regard to the voluntary disclosure policy, his insistence on resubmitting a lowball offer in compromise that he knew was unacceptable surely cannot be evidence of his intention to make a bona fide offer. His failure to comply with Agent Kishlansky's directions to become current on 1992 taxes, to make monthly payments toward his tax liability and to make a compromise offer in the neighborhood of $600,000 leave no room for a finding of good intentions. The facts demonstrate an intention to stall and nothing more. As to Tenzer's intent in regard to his failure to timely file income tax returns, the crimes with which he was charged, his guilty plea is the best evidence of his state of mind.

What is most curious to me is my colleagues' apparent rejection of conclusions arrived at in our previous decision. While it is true that we did not deal with sentencing issues, we made some clear-cut determinations about Tenzer's conduct. My colleagues now are doing just what Tenzer asks them to do—ignore our disagreements with the original conclusions of the district judge. The following passage from Tenzer's reply brief on this appeal sums up his position on downward departure in a nutshell:

> Tenzer showed—and the court previously found—that he had proceeded in good faith to make voluntary disclosure, including a bona fide offer in compromise, but had been thwarted by the IRS from completing that process. Because these are "mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission" and because they showed this case to be atypical of failure-to-file cases, it would be perfectly proper for the lower court to take them into account in departing downward.

The only problem with Tenzer's argument is that we already have *rejected* the previous district court findings that Tenzer had "proceeded in good faith to make voluntary disclosure," that he had made a "bona fide offer in compromise" and that he had been "thwarted" from completing the offer to the IRS. The district court on remand recognized that our previous rejection of these contentions foreclosed Tenzer from raising them on sentencing. No amount of "spin" can change what we already have determined and what the guilty plea imports in regard to Tenzer's conduct. The failure of my colleagues to acknowledge that which the district court recognized and clearly articulated in respect to downward departure in this case compels this dissent.