19-967-cv
*In Re: Tremont Sec. Law, State Law and Ins. Litig.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of June, two thousand twenty.

PRESENT:    GUIDO CALABRESI,
            DENNY CHIN,
            SUSAN L. CARNEY,
                    *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


IN RE: TREMONT SECURITIES LAW, STATE LAW                19-967-cv
AND INSURANCE LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


FOR OBJECTORS-APPELLANTS:                Vincent T. Gresham, The Law
                                         Office of Vincent T. Gresham,
                                         LLC, Atlanta, Georgia *for Bindler*
                                         *Living Trust, Madelyn Haines, John*
                                         *Johnson, William J. Millard Trust,*
                                         *Stella Ruggiano Trust, George*
                                         *Turner, West Trust, and Paul*
                                         *Zamrowski.*

FOR PLAINTIFFS-APPELLEES:
Entwistle & Cappucci LLP, New York, New York; Hagens Berman Sobol Shapiro LLP, Berkeley, California, *for Arthur E. Lange Revocable Trust, Daniel Jackson, Arthur C. Lange, Arthur E. Lange, Neal J. Polan, Eastham Capital Appreciation Fund LP, Laborers Local 17 Pension Plan, and NPV Positive Corp.*

Bernstein Liebhard LLP, New York, New York *for Arthur M. Brainson, Yvette Finkelstein, and Group Defined Pension Plan & Trust.*

Appeal from the United States District Court for the Southern District of New York (McMahon, *C.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Objectors-appellants Bindler Living Trust, Madelyn Haines, John Johnson, William J. Millard Trust, Stella Ruggiano Trust, George Turner, West Trust, and Paul Zamrowski ("Objectors") appeal from the judgment of the district court, entered March 18, 2019, awarding $19,866,014.25 in attorneys' fees to court-appointed lead counsel for plaintiffs-appellees ("Lead Counsel"). On appeal, Objectors contend that the district court erred in overruling their objection to the inclusion of certain hours of work in the fee award on the ground that the issue was foreclosed by this Court's earlier decision in *In re Tremont Sec. Law, State Law & Ins. Litig.*, 699 F. App'x 8 (2d Cir. 2017) ("*Tremont*").

2

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

This case returns to us from an earlier appeal in which we vacated the district court's award of attorneys' fees to Lead Counsel with instructions for the district court to revisit the lodestar multiplier. *Id.* at 18.[1] The factual and procedural history of this case, which arose from the 2008 collapse of Bernard L. Madoff Investment Securities ("BLMIS") and consolidates several putative class actions and derivative suits, is set forth at length in our earlier order. *See id.* at 10-12. Our discussion here is limited to those facts pertinent to resolution of this second appeal.

## I.    *The 2011 Fee Award*

In February of 2011, the parties settled certain claims and submitted a stipulation of partial settlement, amended as of March 25, 2011 (the "Investor Settlement"), to the district court. The Investor Settlement created two separate funds. *Id.* at 11. The first was the "Net Settlement Fund" (the "NSF"), which contained $100 million paid by defendants in exchange for a release of all the claims against them. *Id.* The second was the "Fund Distribution Account" (the "FDA"), a fund structured to receive, allocate, and distribute the assets that remained in one of the two BLMIS

---

[1]    The lodestar is the amount of attorneys' fees calculated by multiplying the number of hours reasonably spent on a matter by an appropriate hourly rate. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). In certain circumstances, a court may then award the attorneys a premium by applying a "multiplier" to the lodestar amount. *Id.*

"feeder funds" managed by defendants, Tremont Group Holdings and its affiliates, after any claims by and against the trustee of the BLMIS bankruptcy estate were resolved in a separate litigation (the "Trustee Litigation"). *Id.*

The Investor Settlement did not provide for how the FDA would be distributed among claimants. *Id.* That task, among others including (1) defending the Investor Settlement, (2) prosecuting certain related actions, (3) defending the Trustee Litigation, and (4) developing plans of allocation ("POAs") for the NSF and the FDA, was delegated to Lead Counsel under the Investor Settlement as a continued responsibility going forward. On August 19, 2011, the Investor Settlement was approved by the district court. The district court also granted Lead Counsel's request for fees and costs relating to the securities law aspect of the settlement, but it denied their fee request as it related to work on the FDA because at that time "[t]here just [was not] enough information about what will be derived or what is necessary in the way of legal service." J. App'x at 123. Lead Counsel was instructed to renew the application "at the time of their motion for approval of the [FDA] Plan of Distribution." J. App'x at 90.

## II.     The 2015 Fee Award

On July 10, 2015, a proposed FDA POA was submitted to the district court, along with a renewed application for attorneys' fees by Lead Counsel. In September 2015, the district court approved the FDA POA and, after considering the factors set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000),

4

granted Lead Counsel's application for "a fee amounting to the lesser of three percent of the funds distributed through the FDA, or its hourly fees (lodestar) multiplied by 2.5." J. App'x at 303.

### III. *Appeal of the 2015 Fee Award*

Certain investors, including Objectors, appealed to this Court. In their appellate brief submitted in connection with this earlier appeal, Objectors argued, *inter alia*, that vacatur of the fee award was warranted because a "[l]ack of detailed information . . . led the court into a significant error in finding [that Lead] Counsel ha[d] performed over 25,000 hours of work in connection with the FDA," because "as [Lead Counsel] conceded, their hours were for *all* activities between 5/6/2011 and 8/13/2015, *not* just FDA work." J. App'x at 324-25 (internal quotation marks omitted). In response, Lead Counsel argued:

> The [Objectors] complain that much of [Lead] Counsel's post-May 6, 2011 time was not limited to administration of the FDA. This is a red herring . . . . While the District Court's recent review of [Lead] Counsel's lodestar focused on post-May 6, 2011 time, it did so because [Lead] Counsel's time before that point had previously been submitted for the Court's review. The District Court properly recognized that the FDA-related award includes all of [Lead] Counsel's efforts in connection with their role in the litigation and settlement of the derivative claims and related Trustee Litigation, the creation and structuring of the FDA, and the recovery, preservation and administration of those assets including defending appeals related to the Settlement and the FDA POA. Under the circumstances, the fee

5

award can and should fairly compensate for all such time reasonably expended on the litigation.

J. App'x at 364.

In a summary order issued on June 26, 2017, we affirmed the district court's approval of the FDA POA but vacated the fee award. *Tremont*, 699 F. App'x at 18. Although we "[did] not question the district court's characterization of Lead Counsel's performance or the complexity or importance of this matter," we held that the district court's awarding of a 2.5 lodestar multiplier amounted to an abuse of discretion because it failed to account for the "lack of contingency risk" associated with the work performed. *Id.* at 17. We did not quarrel with -- indeed we did not discuss at all -- the district court's analysis as to the remaining *Goldberger* factors, and we remanded the case with instructions for the district court to "revise the cap to reflect counsel's limited risk." *Id.* at 18. In a footnote, we observed that "the sparse [time] summaries provided by Lead Counsel are of doubtful adequacy," and ordered the district court on remand to "require the submission of more detailed summaries that, at the very least, break down the hours worked by year and task." *Id.* at 18 n.13.

## IV.    *Remand*

On remand, Lead Counsel moved for approval of a revised multiplier cap of 1.67 and submitted new time summaries. This time, Objectors were the sole investors who filed an objection to the application and they renewed their argument that Lead Counsel's lodestar hours should include only time spent on tasks related to the

6

administration of the FDA itself, rather than the NSF.  The motion was referred to a

magistrate judge (Gorenstein, *M.J.*), and on February 11, 2019, the magistrate judge

issued a Report and Recommendation ("R&R") that recommended granting the motion

for attorneys' fees but reducing the multiplier cap to 1.0, *i.e.*, no multiplier, resulting in

an award of $19,866,014.25.  Addressing Objectors' argument regarding non-FDA work,

the magistrate judge "conclude[d] that excluding hours that were not dedicated solely

to the administration of the FDA is not within the Second Circuit's mandate."  S. App'x

at 16.

Objectors filed objections to the R&R, and, in an order issued March 15,

2019, the district court overruled the objections.  The district court determined that the

case had been "remanded for one reason and one reason only: to revise the lodestar cap

downward, to reflect . . . counsel's limited risk in bringing this action," and it adopted

the R&R.  S. App'x at 30.  This appeal followed.

## DISCUSSION

Objectors contend that that the district court erred in interpreting our

mandate as foreclosing it from revisiting the question as to whether hours for non-FDA

work should have been excluded from Lead Counsel's lodestar.  "[W]e review *de novo*

whether [a] judgment comports with [the appellate court's] mandate."  *Carroll v. Blinken*,

42 F.3d 122, 126 (2d Cir. 1994).

7

## I.     *Applicable Law*

The mandate rule is one aspect of the law-of-the-case doctrine, which holds that "where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (internal quotation marks and brackets omitted).  The "mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012).  And "where the mandate limits the issues open for consideration on remand, the district court ordinarily may not deviate from the specific dictates or spirit of the mandate by considering additional issues on remand." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) (citation omitted).

The other prong of the law-of-the-case doctrine concerns our own limitations in the face of an earlier decision in the case from our Court.  *See United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000).  Under this doctrine, "absent cogent or compelling reasons," we "must usually adhere to [our] own decision at an earlier stage of the litigation." *Id.* (internal quotation marks omitted).  "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.*

8

## II. *Application*

Objectors' argument on remand regarding removal of non-FDA hours from the lodestar exceeded the scope of our mandate and the district court rightly declined to consider it. This issue was raised by Objectors in their appellate brief to the Court in the previous appeal, and yet our 2017 order took issue solely with the district court's failure to account for the lack of contingency risk involved in the litigation, finding "no merit in appellants' other arguments." *Tremont*, 699 F. App'x at 18. Our mandate instructed the district court to "revise the [lodestar multiplier] cap to reflect counsel's limited risk," *id.*, and to seek "more detailed [time] summaries" in light of their "sparse[ness]," *id.* at 18 n.13. We did not instruct the district court to determine whether the hours included in Lead Counsel's lodestar related only to the FDA. Consequently, doing so would have exceeded the scope of our mandate.

There is also no cogent reason for this Court to revisit our earlier order affirming all but the lodestar multiplier cap in the 2015 attorneys' fee award. Objectors contend that the new evidence exception is applicable here because "prior to the 2018 Time-Summaries, only [Lead] Counsel knew what non-FDA work was included in their FDA-Lodestar." Appellant Br. at 34. This is plainly untrue, as Lead Counsel told both the district court in 2015, and our Court in the 2017 appeal that its application for attorneys' fees included time spent "defending the Settlement and Trustee Settlement, prosecuting related actions contemplated under the Settlement and, most significantly,

9

bringing the NSF and FDA allocation issues to conclusion."  J. App'x at 179; *see also* J. App'x at 364.  The additional detail to already submitted time records does not amount to compelling new evidence.  *See Tenzer*, 213 F.3d at 40.

Similarly, because both the district court and our Court knew of and approved of the inclusion of non-FDA time in Lead Counsel's 2015 fee award application, there is no clear error or manifest injustice.  The Investor Settlement here specifically contemplated that Lead Counsel would continue to work on matters other than the FDA.  Compensating them for that work, at a reasonable rate, is not unjust. Moreover, Lead Counsel was candid with this Court and the district court about the inclusion of non-FDA hours throughout the application and appeal process.  Our previous decision to affirm the inclusion of such time was not in error.  *See Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) ("The law of the case will be disregarded only when the court has 'a clear conviction of error' with respect to a point of law on which its previous decision was predicated.").[2]

\* \* \*

---

[2] Lead Counsel also contend that Objectors lack standing to sue.  Because we reject Objectors' argument on the merits, we do not reach this issue.

We have considered Objectors' remaining arguments and conclude they are without merit.  For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk